IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GWENDOLYN M. STUBBS, et al., | : | CIVIL ACTION NO. 3:CV-03-2362 |
| | : | |
| Plaintiffs | : | (JUDGE JONES) |
| | : | |
| v. | : | |
| | : | |
| DOMINICK DeROSE, et al., | : | |
| | : | |
| Defendants | : | |

## **ORDER**

## **March 29, 2006**

Plaintiff Gwendolyn Stubbs ("Plaintiff" or "Stubbs"), an inmate, who at all times relevant to the complaint was incarcerated at the Dauphin County Prison, filed the instant civil rights action pursuant to 42 U.S.C. § 1983. Stubbs seeks damages and injunctive relief for violations of her First, Fourth, Eighth and Fourteenth Amendment rights, as well as constitutional violations of her minor son, Cleo Stubbs, who was born in the Dauphin County Prison. (Rec. Doc. 1). Named as defendants are Warden Dominick DeRose ("DeRose"), Deputy Warden Elizabeth Nichols ("Nichols"), Corrections Officer Walizer ("Walizer"), Chaplain Calvin Favers[1] ("Favers") and five John Doe defendants.

---

1 This Defendant is incorrectly referred to throughout the complaint as Calvin Favor. As stated in the Defendant's motion to dismiss, the correct spelling of this Defendant's name is Calvin Favers.

By previous Order of Court, Defendants DeRose and Nichols were dismissed from the action. (Rec. Doc. 11).  All claims against Defendant Walizer, with the exception of Plaintiff's Eighth Amendment claim, were dismissed, and Defendant Walizer was directed to file an answer to the complaint.  (Rec. Doc. 11).  Finally, Plaintiff was granted thirty days within to properly name the John Doe defendants and twenty days within which to show cause why the complaint should not be dismissed as to defendant Favers for failure to prosecute. (Rec. Doc. 11).

Presently before the Court is Defendant Favers' motion to dismiss, in which Favers seeks dismissal of all claims, except Plaintiff's Eighth Amendment claim.  (Rec. Doc. 18). The motion is fully briefed and is ripe for disposition.  For the reasons set forth below, the motion will be granted.

Additionally, because Plaintiff has failed to name the John Doe defendants, such defendants will be dismissed from the action.  Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them.  Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

**STANDARD OF REVIEW**:

2

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." Id. The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). Consistent with these principles, the court must grant leave to amend before dismissing a claim that is merely deficient. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**STATEMENT OF FACTS**:[2]

The Plaintiff alleges that from 1998 through August, 2003, Defendant Favers "initiated contact with the plaintiff Gwendolyn Stubbs and solicited her, for purposes of his sexual gratification, both while plaintiff was in prison and while she was out of prison

---

2 In accordance with the standard of review for a motion to dismiss, the Court will present the facts as alleged in plaintiff's complaint. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the Court as to reasonableness of the plaintiff's allegations.

on parole and, or, probation." (Rec. Doc. 1, ¶ 12). Plaintiff alleges that this was a violation of her Eighth and Fourth Amendment rights.

In December, 2002 Plaintiff was recommitted to the Dauphin County Prison as a parole violator. At that time Plaintiff was nearing the end of her pregnancy. On December 13, 2002, Stubbs began having contractions and was taken to the Harrisburg Hospital. (Rec. Doc. 1, ¶ 14). A doctor at the Harrisburg Hospital determined that Plaintiff was approximately 7 centimeters dilated and should remain in the hospital. (Rec. Doc. 1, ¶ 15). Dauphin County Prison officials "countermanded the doctor's wishes that Gwendolyn stay in the hospital and took her back to DCP," where she continued to have intermittent labor pains. (Rec. Doc. 1, ¶¶ 15, 16).

On December 14, 2002, at approximately 9:00 pm, Stubbs' labor pains became severe. She told defendant Walizer of her pain but "Walizer told plaintiff that she was not in labor." (Rec. Doc. 1, ¶¶ 16, 17). At 2:30 A.M. on December 15, 2003,[3] "due to Gwendolyn's screams, defendant Walizer called a nurse to plaintiff's cell." (Rec. Doc. 1, ¶ 18). Nurse Doe told plaintiff that she was "hallucinating, would not call a doctor, gave her two Tylenol tablets and said 'lay your ass down.'" (Rec. Doc. 1, ¶ 19). At 4:30 a.m., Cleo Stubbs was born in plaintiff's cell. The baby was delivered by inmate Lisa

---

3 Plaintiff points out that this date is a typographical error. (See Doc. 10). The correct date is December 15, 2002. Id.

4

Hall, as there were "no nurses, no doctors, no equipment and no professional assistant provided."  (Rec. Doc. 1, ¶ 21).  After the baby was born, Plaintiff heard someone say that the baby was dead and to get a garbage bag so that Lisa Hall could put the dead baby in it.  (Rec. Doc. 1, ¶ 21).  However, before this occurred, the baby began to cry. (Rec. Doc. 1, ¶ 21).  Nurse Ken Doe arrived approximately 45 minutes later. The paramedics arrived at approximately 6:30 a.m.  The Plaintiff remained in the Harrisburg Hospital for a week before she was released.  She "never heard anything more about the parole violation which caused her to be incarcerated two weeks before baby Cleo was born." (Rec. Doc. 1, ¶ 25).

In August 2003, Stubbs was again incarcerated in the Dauphin County Prison.  She alleges that "shortly thereafter her counselor Tiffany was advised that something improper of a sexual nature was going on between her and defendant Favor (sic) in a room at the prison."  (Rec. Doc. 1, ¶ 26).  Stubbs told Tiffany "of the sexual contacts between her and the Chaplain and all that had happened including the fact that her mother (Gwen's mother) had told her Favor (sic) was the father of an earlier born child (not Cleo). (Rec. Doc. 1, ¶ 27).  Plaintiff claims that "very shortly thereafter the Defendant Nichols became personally involved in the matter." (Rec. Doc. 1, ¶ 28).  Nichols "purported to take an interest, telling Gwen that she wanted to have the matter investigated, so that she could do something about Favor (sic)."  (Rec. Doc. 1, ¶ 28).  Stubbs alleges, however, that

Nichols' "representations were a ruse" and that "her intention was to suppress and control information about Favor (sic) so that Nichols and DeRose could take action to protect themselves and DCP." (Rec. Doc. 1, ¶ 29). Thus, defendant Nichols and DeRose "victimized plaintiff and violated her federally guaranteed rights of access to the Courts." (Rec. Doc. 1, ¶ 29).

Stubbs further alleges that a short while after Nichols became involved Investigator Doe came to see Gwen at her prison cell to try to "get Gwen to sign a release protecting the defendant and any officers or personnel at DCP from any legal action she might take." (Rec. Doc. 1, ¶ 30). Stubbs refused and told investigator Doe to "talk to her lawyer." (Rec. Doc. 1, ¶ 30).

**DISCUSSION**:

### A. Statute of Limitations

Civil rights actions under 42 U.S.C. § 1983 are, in essence, tort claims. Owens v. Okure, 488 U.S. 235, 249-50 (1989). As such, they are subject to the same statute of limitations period applicable to state personal injury actions. Id.; Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003). In Pennsylvania, this period is two years. 42 PA. CONS. STAT. § 5524(7); see also Garvin, 354 F.3d at 220. The statute of limitations period commences on the date when legal injury accrues; when the plaintiff

knew or had reason to know of the injury on which the claim is based. See Rose v. Bartle, 871 F.2d 331, 347-51 (3d Cir. 1989).

Plaintiff's complaint was filed on December 23, 2003. She alleges that from "1998 through August, 2003, defendant Favor (sic) initiated contact with [her] and solicited her, for purposes of his sexual gratification...". Thus, Defendant Favers seeks dismissal of those claims which occurred prior December 23, 2001. The Court agrees. Any claims of sexual harassment and, or, assault predating December 23, 2001 are clearly untimely under the two-year statute of limitations.

### B.    Merits Analysis

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. See 42 U.S.C. § 1983; see also Cohen v. City of Philadelphia, 736 F.2d 81, 83 (3d Cir. 1984).

### 1. First Amendment

To the extent that Defendant Favers argues that any First Amendment claim against him should be dismissed, Plaintiff states in her brief in opposition that she "does not bring a claim against defendant Favers for any violations of rights under the First Amendment or for civil conspiracy" and "[t]herefore, plaintiff will not attempt to argue at this time support for either a claim for civil conspiracy or for a violation of her First Amendment rights. (Doc. 20). Thus, Defendant Favers' motion to dismiss any First Amendment claims or conspiracy claims will be granted.

### 2. Fourth Amendment

The Fourth Amendment guarantees:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Defendant Favers seeks dismissal of the Plaintiff's Fourth Amendment claim on the basis that the Fourth Amendment protection ends once an individual is in custody. See Graham v. Connor, 490 U.S. 386 (1989) and Brower v. County of Inyo, 489 U.S. 593 (1989). Thus, since Stubbs was in custody during the time of the alleged assaults, the Fourth Amendment does not protect her. To the extent that Plaintiff attempts to rely on the case of Fontana v. Haskin, 262 F.3d 871, 87-79 for the proposition that "sexual advances by police officers may constitute an 'unreasonable intrusion on one's bodily integrity' in violation of the Fourth Amendment", Plaintiff's reliance is misplaced. Fontana involved a unreasonable dominion by a government official over a "suspect" in custody. Id. This is not the situation in the instant action. Plaintiff's complaint clearly states that Favers "solicited [plaintiff], for purposes of his sexual gratification, both while plaintiff was in prison, and while she was out of prison on parole and, or, Probation." (Rec. Doc. 1, ¶ 5). Thus, Stubbs clearly cannot rely on the Fourth Amendment to pursue a seizure claim during any pre-trial detention, because she was not merely a "suspect" in custody, but rather an incarcerated parole violator. Accordingly, Defendant Favers' motion to dismiss this claim will be granted.

## **CONCLUSION**:

For the above-state reasons, Defendant Favers' motion to dismiss any claims relating to events allegedly occurring prior to December 23, 2001, and Plaintiff's First, and

Fourth Amendment claims is granted.   Plaintiff's Eighth Amendment claim against defendant Favers remains.  Further, the John Doe Defendants will be dismissed from the action for Plaintiff's failure to timely identify these Defendants.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant Favers' motion to dismiss (Doc. 18) all claims relating to events allegedly occurring prior to December 23, 2001, and to dismiss Plaintiff's First and Fourth Amendment claims, is GRANTED.

2. Defendant Favers is directed to file an answer to the remaining Eighth Amendment claim, or other responsive pleading, within twenty (20) days of the date of this order.

3. The John Doe Defendants are DISMISSED from this action for Plaintiff's failure to timely identify those Defendants.

        s/ John E. Jones III
        John E. Jones  III
        United States District Judge